IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JIMMIE DALE FRAZIER, JR.                                                                       PLAINTIFF

v.                     Civil No. 04-5140

SHERIFF KEITH FERGUSON; MAJOR
GENE DRAKE; CAPTAIN HUNTER PETRAY;
LT. HENDRICK; the BENTON COUNTY
DETENTION CENTER DIETICIAN; and
the BENTON COUNTY DETENTION CENTER
KITCHEN SUPERVISOR                                          DEFENDANTS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Jimmie Dale Frazier, Jr. brings this pro se civil rights action under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc et seq. Frazier contends that his religious rights were violated while he was detained in the Benton County Detention Center.

On June 24, 2005, the defendants who have been served filed a motion for summary judgment (Doc. 19). By order entered on August 12, 2005, Frazier was directed to complete, sign, date, and return by September 9, 2005 an attached questionnaire that would serve as his response to the defendants' summary judgment motion. On September 20, 2005, plaintiff's response (Doc. 23) was filed. The summary judgment motion is currently before the undersigned for issuance of this report and recommendation.

## I. Background

In his initial complaint, Frazier raised claims arising out of two sets of facts. The first claim arose from his contention that he was not provided meals that comply with his religious

beliefs. He also claimed that he was denied access to the law library in violation of his First Amendment rights. Prior to service, the undersigned issued a report, recommending that the access-to-courts claims be dismissed, that Sgt. Sherry and the Benton County Sheriff's Office be dismissed as defendants, and that the plaintiff be directed to utilize the discovery process to identify the "Benton County Detention Center Dietician" and the "Benton County Detention Center Kitchen Supervisor." (Doc. 10.) This report was adopted without objections from the plaintiff. (Doc. 12.)

As relevant to the remaining claim, Frazier contends that his religious rights were violated under the First Amendment and under RLUIPA when he was not served meals that complied with tenets of his personal religious faith as a Seventh-day Adventist.

Frazier was booked into the Benton County Detention Center (BCDC) on October 21, 2003. On March 24, 2004, he filed a medical request, informing the defendants that due to his religious observances, he "must undergo the abstemious ritual of self-purification of which animal flesh may not be consumed as part of my gastronomic intake." He indicated that this "ritual" was based on his beliefs as a Seventh-day Adventist. Frazier was immediately switched to a jail-issued vegetarian tray. (Doc. 23 at ¶¶ 1-4.)

Two months later on May 31, Frazier filed a grievance, stating that while he was thankful for the vegetarian trays, the trays did contain eggs, cheese, milk, and jell-o, which were animal by-products and thus not allowable foods for the "ritual." Major Gene Drake responded that the vegetarian trays had been designed by a licensed dietician. (Doc. 23 at ¶¶ 5-6.) On June 8, Frazier filed another grievance, stating that his religious observances of self purification required him to abstain from animal flesh and animal byproducts and that the jail officials' oversight in

including animal byproducts on his tray jeopardized his religious freedoms. To this grievance, Captain Petray responded that vegetarian diet had been created by a registered dietician. (Doc. 23 at ¶¶ 7-8.) Based on the exhibits attached to the defendants' Statement of Indisputable Facts in Support of Motion for Summary Judgment, these menus were designed by Aramark Correctional Services, Inc. (Doc. 21 at Ex. 2.) In a June 16 grievance, Frazier asked why gelatin, eggs, and cheese were included on his vegetarian trays, and Captain Petray responded, "Mr. Frazier, you requested a vegetarian tray and that is what you are receiving." (Doc. 23 at ¶¶ 9-10.)

On August 27, Frazier filed two grievances about one occasion where fish was included on his vegetarian tray, and that Deputy McCullum (who is not a defendant) told him to eat around the fish. Captain Petray responded that he would check with the kitchen staff regarding the grievances. (Doc. 23 at ¶¶ 12-14, 21.) Fish was not included on any of the plaintiff's other meal trays. (Doc. 23 at ¶ 21.)

Seventh-day Adventists practice a vegetarian dietary lifestyle. The Seventh-day Adventist Health Statement recommends a "lacto-ovo" vegetarian diet. A "lacto-ovo" vegetarian diet includes diary products and eggs, along with all plant foods, such as grains, fruits, and vegetables, pulses and legumes, and nuts and seeds. (Doc. 23 at ¶¶ 16-18.) While Frazier agrees with the general health statement concerning the official Seventh-day Adventist diet, he contends that he is part of small minority of followers (approximately 2%) who practice a strict vegan diet, which means that he does not consume "any animal derived products." (Doc. 23 at ¶¶ 17-18, 22.) Frazier acknowledges that the vegetarian trays given at the BCDC "comply with the religious requirements of the SDA faith, they do 'not' comply with the SDA's that are strict

AO72A
(Rev. 8/82)

Vegans," and he stated that the "BCDC dietary menus do 'not' provide for the individual SDA who prefers a Vegan diet." (Doc. 23 at ¶ 22 and pg. 13.)

Defendants argue in their motion for summary judgment that the plaintiff is suing them only in their official capacities, that Benton County does not have an unconstitutional policy concerning religious diets, that there is no underlying constitutional violation, and that if plaintiff had brought claims against them in their individual capacities, they would be entitled to qualified immunity.

Frazier agrees with the defendants' contention that he is suing them in their official capacities only. (Doc. 23 at ¶ 23.) He claims that he is without knowledge as to what the BCDC policies are concerning special diets. (Doc. 23 at 24.)

## II. Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Commerce v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir.1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d 607 *(citing Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### III. Discussion

Official Capacity Claims

The defendants assert, and the plaintiff agrees, that the claims raised against the defendants are made in their official capacities only. Under section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims may be stated against a defendant in both his individual and his official capacities. In *Gorman v. Bartch*, 152 F.3d 907 (8th Cir. 1998), the Eighth Circuit discussed the distinction between individual and official capacity suits. As explained by the *Gorman* case:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available. Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself. Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense.

*Gorman*, 152 F.3d at 914 (citations omitted).

The Eighth Circuit has consistently advised plaintiffs to specifically plead whether government agents are being sued in their official or individual capacities to ensure prompt notice of potential personal liability. *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989); *see also Andrus v. Arkansas*, 197 F.3d 953 (8th Cir. 1999) (in actions against officers specific pleading

of individual capacity is required to put public officials on notice they will be exposed to personal liability). When the plaintiff fails to state whether he is suing an official in his individual capacity, the Eighth Circuit has construed the claim to be against the official in his official capacity only. *See Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) ("in order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity."); *Egerdahl v. Hibbing Community College*, 72 F.3d 615, 620 (8th Cir. 1995) ("*Nix* requires that a plaintiff's complaint contain a clear statement of her wish to sue defendants in their personal capacities. Neither a cryptic hint in a plaintiff's complaint nor a statement made in response to a motion to dismiss is sufficient").

While the court has an obligation to construe a pro se complaint liberally, *see Haines v. Kerner*, 404 U.S. 519, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972), this requirement that individual-capacity claims be specifically pled has been applied to pro se litigants. *See Taylor v. Roper*, 53 Fed. Appx. 142 (8th Cir. 2003) (unpublished per curiam) (*citing Murphy v. Arkansas*, 127 F.3d 750, 754-55 (8th Cir. 1997) (Eighth Circuit strictly enforces this pleading requirement)).

Defendants asserted that plaintiff was only bringing official capacity claims, and in response to this assertion, plaintiff agreed. As noted above, official capacity claims are the equivalent of claims asserted against the employing entity--here Benton County. Under section 1983, a governmental entity may not be held vicariously liable for the unconstitutional acts of employees. A governmental entity, however, may be held liable for the unconstitutional acts of its officials or employees when those acts implement or execute an unconstitutional custom or policy. *See Doe v. Washington Co.*, 150 F.3d 920, 922 (8th Cir. 1998).

Thus, Benton County would be held liable for defendants' conduct only if it had a policy or custom that caused plaintiff's injury. *See Board of County Comm'rs v. Brown*, 520 U.S. 397, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997). In the absence of a written policy that jail officials were to violate detainee's First Amendment rights, plaintiff must identify a pattern of widespread unconstitutional conduct that was so pervasive and well-settled that it had the effect of law. *See Jane Doe A v. Special Sch. Dist. of St. Louis County*, 901 F.2d 642, 646 (8th Cir. 1990). Plaintiff must show that Benton County "through its deliberate conduct . . . was the 'moving force' behind the injury alleged." *Brown*, 117 S. Ct. at 1388.

"[I]naction or laxness can constitute government custom if it is permanent and well settled." *Tilson v. Forrest City Police Dept.*, 28 F.3d 802, 807 (8th Cir. 1994) (citation omitted). "Such a government custom of laxness or inaction must be the moving force behind the constitutional violation." *Id.*

Any suggestion of the existence of a basis the hold Benton County liable is wholly lacking. There is simply nothing from which to conclude a genuine issue of fact exists to the County's liability on Frazier's section 1983 constitutional claims. Notably, Frazier received a vegetarian tray when he indicated that his religious preference was as a Seventh-day Adventist. This tray meets the dietary requirements of 98 percent of Seventh-day Adventists, and it was provided to Frazier so he could comply with his religious beliefs. Simply because Frazier is part of a minority that are vegans, Benton County's failure to provide vegan meals to a sole inmate does not constitute a custom of violating inmates' First Amendment rights. Therefore, defendants' motion for summary judgment should be granted on plaintiff's constitutional claims brought under section 1983.

AO72A
(Rev. 8/82)

RLUIPA

In addition to his constitutional claims, Frazier has raised a claim under the Religious Land Use and Institutionalized Persons Act (RLUIPA). Under this act, Congress established a statutory free exercise claim encompassing a higher standard of review than that which applies to a constitutional free exercise claim. RLUIPA provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 2 of the Civil Rights of Institutionalized Person Act (42 U.S.C. § 1997), even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person - (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).

RLUIPA requires Frazier to show, as a threshold matter, that there is a substantial burden on his ability to exercise his religion. *See* 42 U.S.C. § 2000cc-2(b). To constitute a substantial burden, the government policy or actions:

> must "significantly inhibit or constrain conduct or expression that manifests some central tenet of a [person's] individual [religious] beliefs; must meaningfully curtail a [person's] ability to express adherence to his or her faith; or must deny a [person] reasonable opportunities to engage in those activities that are fundamental to a [person's] religion."

*Weir v. Nix*, 114 F.3d 817, 820 (8th Cir. 1997).

Frazier repeatedly complained to the defendants that he was unable to fully practice his religious beliefs because defendants provided meals to him that contained animal byproducts, and as part of his observance of his religious faith, he does not consume food that contains animal byproducts. The defendants do not address this issue in their motion for summary judgment. Therefore, this claim remains before the court.

AO72A
(Rev. 8/82)

## IV. Conclusion

Therefore, I recommend that defendants' motion (Doc. 19) for summary judgment be granted only as to the First Amendment claims brought under 42 U.S.C. § 1983 and that those claims be dismissed with prejudice. Still pending before the court is the plaintiff's claim that the defendants' actions violated RLUIPA.

**The parties have ten days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely written objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 30th day of January 2006.

                                             **/s/ Beverly Stites Jones**
                                             _____
                                             HON. BEVERLY STITES JONES
                                             UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)